## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BKY Case No. 11-43113 RJK

Curtis C. Nelson,

        Debtor.

Crown Bank,                                               Adv. No. 11-4196

        Plaintiff,

vs.

Curtis C. Nelson,

        Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Curtis C. Nelson ("Defendant") respectfully submits this response to Crown Bank's ("Plaintiff") motion for summary judgment. Plaintiff's motion is premature, it fails to establish reasonable reliance, and there are clearly genuine issues of material fact as to the cause of Plaintiff's damages. Accordingly, Plaintiff's motion should be denied.

### FACTS

### I. PROCEDURAL HISTORY-DISCOVERY.

Plaintiff's Complaint was filed on June 28, 2011. On July 29, 2011, Defendant timely filed his Answer. A scheduling order was issued on August 2, 2011. On August 30, 2011, Defendant served discovery on Plaintiff. See Discovery and Affidavit of Service, Exhibit A.

121294567

Plaintiff has filed a motion for summary judgment, scheduled to be heard on October 5, 2011. Defendant's response to the motion for summary judgment is due no later than September 30, 2011. Plaintiff responded to Defendant's discovery at 5:47 p.m. on September 29, 2011. *See* Exhibit B. Plaintiff did not provide any documents with its responses, asserts numerous objections, and refuses to provide Plaintiff's communications with the FDIC regarding the loans at issue. Id. As such, Defendant will be unable to use Plaintiff's discovery responses to defend against Plaintiff's motion.

Without Plaintiff responding to Defendant's discovery in this matter, Defendant cannot present facts that are essential to Defendant's opposition to Plaintiff's motion for summary judgment. See Unsworn declaration of Thomas G. Wallrich. The discovery was pursued diligently, and Plaintiff's motion was filed with a response time that is prior to Plaintiff's discovery being due. Id. Summary judgment should not be granted without Plaintiff having properly answered discovery and without having provided documents.

In discovery, Defendant seeks information that will assist him in defending against this motion. Defendant has requested a copy of Plaintiff's loan files, which should include internal communications regarding Defendant, and officer notes regarding actions taken by the bank on the loans. Id. Defendant has also sought communications between the bank and the FDIC, which should include the bank's justifications to the FDIC on why it made the loans at issue. The response to this request for the production of documents should include statements of what information Plaintiff relied on in determining to make the loans. Id.

Defendant has also sought all information related to any guidelines under which the Plaintiff operates in determining to make loans. Id. All of this information is relevant to Defendant's defense, including the issue of Plaintiff's reasonable reliance. Id.

121294567

## B. FACTUAL HISTORY.

Plaintiff's fraud allegations involve four separate areas of inquiry: the coin collection; the loans from family members; the values of Defendant's real estate; and the value of Defendant's Tradestation accounts. When each issue is analyzed, in light of the controlling standards on a motion for summary judgment, it is clear that this motion should be denied.

### A.    The coin collection.

As to the coin collection, Defendant denies ever making any statements regarding additional coins that would increase the value of the collection to $3,000,000 or $4,000,000 dollars. <u>See</u> Unsworn Declaration of Defendant. In conversations with John Lindquist at Plaintiff, the Defendant simply stated he would provide the coin collection as collateral, after Mr. Lindquist requested the collection be provided as collateral. <u>Id</u>.

The Defendant had a coin collection of that was originated by his grandfather. <u>Id</u>. The coins were stored in a gun safe in the garage of his home. <u>Id</u>. When David Marion visited Defendant's home to review the collection, which was not done at Plaintiff's request and was for an unrelated matter, Defendant did not make any comment about any particular items. <u>Id</u>. Mr. Marion reviewed the coins for approximately 25 minutes. <u>Id</u>. The Defendant had no idea what the coins were worth and relied solely on Mr. Marion's valuation. <u>Id</u>. This is evidenced by the valuation in Defendant's original financial statement of $500,000 for Jewelry, gemstones and rare coins. <u>Id</u>.

In addition, one of the Plaintiff's attorneys acknowledges that Plaintiff never relied on the Defendant's alleged representations about the coin collection, in the following email:

> "Busch, Kevin M." <BuschK@moss-barnett.com>
> 03/26/2010 09:40 AM
>      To
>      "'twallrich@hinshawlaw.com'" <twallrich@hinshawlaw.com>

cc

Subject
Crown Bank - Nelson

Tom, we fully agree that Mr. Nelson has not and is not providing any representation with respect to the value of the coins. The form of agreement we saw yesterday, however, amounted to a full release of all liabilities and would have resulted in a release of the loans. A simple letter or email from Mr. Nelson to the bank disclaiming any statement with respect to the value of the coins should be sufficient.

Thanks.

Kevin M. Busch
Attorney at Law
Moss & Barnett
A Professional Association
Ph: 612-877-5292  Fax: 612-877-5999
BuschK@Moss-Barnett.com
90 South Seventh Street, Suite 4800 | Minneapolis, MN 55402
www.moss-barnett.com

See Unsworn Declaration of Thomas G. Wallrich at Exhibit C. Finally, Plaintiff never had anyone with experience in valuing coins look at the coins prior to loaning any money or extending the maturity date on any loans. See Unsworn Declaration of Defendant. After taking the coins as collateral, John Lindquist and Peter Dahl visited the Defendant's home and briefly looked at the coins. Id. Later, Mr. Lindquist and the Defendant loaded the coins into eleven large plastic bins for delivery to a secured facility at Brinks, at the Plaintiff's direction. Id. Clearly, the Plaintiff never reasonably relied on any information regarding the coins, as it never had them appraised prior to making any lending decision. Because there was no reasonable reliance, there can be no fraud.

**B.     The family member loans**.

As to the inter-family loans, on numerous occasions the Defendant had conversations with John Lindquist. Id. Mr. Lindquist is a vice-president of Plaintiff. Id. In at least one of

4

these conversations, the loans from family members were discussed and Mr. Lindquist stated to the Defendant that "we aren't concerned about those." Id. Defendant stated that if required by Plaintiff, he would try to obtain agreement from his family members to subordinate their debt to the Plaintiff's debt. Id. The Plaintiff was aware at all relevant times of loans owed to family members. Id.

In an email to John Lindquist, Defendant stated he would be able to obtain the subordination by a trust of its rights under a preexisting loan to the Defendant. See Exhibit D. The trust loan documentation already contained a provision allowing for subordination of that facility to any third party debt. Id. Despite the Defendant's repeated offers to document the subordination of the trust facility, Plaintiff never followed up on this issue. See Unsworn Declaration of Defendant.

As Plaintiff was offered a way to protect itself and was clearly given notice of the loans, and simply chose to ignore it, there was no fraud.

### B.    The houses.

As to his houses, when he originally applied for the loan, Defendant believed his houses were worth the amounts listed on his financial statement. Id. The value of the houses was listed as of July 2007, and Defendant relied on a 2005 appraisal, as noted in his financial statement. See Plaintiff's Exhibit A. In addition, the tax value of the Defendant's home is a matter of public record and the Plaintiff could easily have reviewed the information. Id. Finally, over the years Defendant spent significant funds improving his homestead, by adding three acres of land, a new driveway and a new entrance. Id.

121294567

### D.      The Tradestation accounts.

As to the Tradestation Accounts, it is important to note that at no time, until discovery in this lawsuit, did Plaintiff ever do anything to verify any information the Defendant provided to it. On a $3,000,000 loan, nothing was verified by Plaintiff.

Tradestation did not clear its own trades, and at the time had different clearing houses for stocks and options, (JPMC), currencies (Gain) and for futures (RJ O'Brien).  See Unsworn Declaration of Defendant.  Unless Plaintiff has statements from all three of these clearing houses, it probably does not have complete information.  Id.

### E.      The real reason for the loans.

Finally, Plaintiff intimates that Defendant invested in Visible Customer on the ground floor and borrowed money to set up the company.  This was not the case.  Plaintiff was not relying on anything from Defendant, instead it was desperately trying to shore up a troubled loan, and secure investors for one of its existing customers.

Plaintiff's loans to Defendant arise from Defendant's investment in Visible Customer Holdings, LLC ("Visible Customer"), an entity that was established on August 1, 2005 by John Stapleton.  Id.  Visible Customer and John Stapleton were both customers of Plaintiff before Defendant's investment in Visible Customer.  Id.

Defendant was not an owner of Visible Customer until mid-2008.  Id.  At such time, unbeknownst to Defendant, Visible Customer was already a troubled company, which in turn caused Plaintiff great concern.  Plaintiff needed, desperately, to find a new investor to shore up the books as to Visible Customer loans, and thereby shore up Plaintiff's balance sheet relating to Visible Customer loans.  Id.  This investor was the Defendant.

When Mr. Stapleton introduced Defendant to Crown Bank, Mr. Stapleton was already indebted to the bank by at least $2,000,000, all of his equity in Visible Customer. Id. Peter Dahl spoke highly of Mr. Stapleton to Defendant and stated how willing Crown Bank was to loan Defendant funds to invest in Visible Customer. Id. It appeared as if the bank was predisposed to lend funds to Defendant. Id.

Defendant not only ended up putting new funds into Visible Customer, after the initial loan the Plaintiff required that he personally guarantee another loan previously extended to Visible Customer and John Stapleton. Id. This was demanded by Plaintiff after they already had Defendant on the hook and he felt he had no choice, as if Plaintiff had the proverbial gun to his head. Id.

**F.      Damages.**

As noted by Plaintiff, Defendant agreed to a judgment of $3,800,000. Plaintiff seeks this amount, but fails to account for the funds from the sale of the coins and the funds it received from foreclosing its lien on the assets of Visible Customer. Id. In addition, Plaintiff required Visible Customer to sell its only real asset, the software, to Mr. Stapleton for $500,000, which upon information and belief, went to Plaintiff. Id.

## STANDARD ON SUMMARY JUDGMENT

The Plaintiff has a significant burden on a motion for summary judgment. Summary judgment is only appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Boyle v. Anderson*, 68 F.3d 1093 (8th Cir. 1995), cert. denied, 516 U.S. 1163 (1996). The non-moving party must demonstrate the existence of specific

7

facts in the record that create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

On summary judgment, the Court must view the evidence and the inferences that may be reasonably drawn therefrom in the light most favorable to the nonmoving party. *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

Here, there are clearly genuine issues of material fact to avoid summary judgment in favor of the Plaintiff.

## ARGUMENT

Plaintiff has not established that its reliance on anything Defendant said or provided was reasonable, or that it actually relied on any information provided by the Defendant. Furthermore, Plaintiff has not been damaged by any representation of Defendant. Finally, Plaintiff has yet to fully answer Defendant's discovery, and it would be unfair to rule on summary judgment without Defendant having had a full and fair opportunity to conduct discovery. Plaintiff's motion should be denied.

Plaintiff has sued under sections 523(a)(2)(A) and (B) of the Bankruptcy Code, which provide:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

\*\*\*

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]

8

(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive[.]

See 11 U.S.C. § 523(a)(2)(A) and (B).

The burden of proving that a debt is nondischargeable under § 523(a) is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991). Exceptions to discharge are narrowly construed against the creditor and liberally in favor of the debtor, thus effectuating the fresh start policy of the Bankruptcy Code. *In re Bren,* 284 B.R. 681, 689-90 (Bankr. D. Minn. 2002)(citing *The Merchants of Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 791 (8th Cir. BAP 1999)).

"To establish fraud under 11 U.S.C. § 523(a)(2)(A), the plaintiff must show:

(1) the debtor made a representation *other than a statement respecting the debtor's or an insider's financial condition*;

(2) at the time the representation was made the debtor knew it was false;

(3) the debtor made the representation deliberately and intentionally with the intent and purpose to deceive the creditor;

(4) the creditor justifiably relied upon such representation; and

(5) the creditor sustained injury as a proximate result of the representation."

9

*Id.*(citations omitted, emphasis added).

To establish fraud under 11 U.S.C. § 523(a)(2)(B), the plaintiff must show *reasonable reliance*. A determination of reasonable reliance requires consideration of three factors:

(1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices);

(2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and

(3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).

*See Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir.1993) (en banc).

Here, Plaintiff has not met its burden. Summary judgment should be denied.

## I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANT ON COUNT I OF PLAINTIFF'S COMPLAINT.

The Court should grant summary judgment *to Defendant* on Count I of Plaintiff's Complaint. Count I is brought under Section 523(a)(2)(A) of the Bankruptcy Code which expressly precludes relief based on any statement "respecting the debtor's or an insider's financial condition." Plaintiff argues that the Court should grant summary judgment because of oral statements regarding the values of the Defendant's assets. Clearly, such statements even if actually made, were "respecting the debtor's financial condition."

121294567

Indeed, every factual allegation under Count I in Plaintiff's Complaint that discusses any alleged representation by the Defendant is about his financial condition.  Every representation on which Plaintiff purportedly relies concerns the Defendant's financial condition.  There is no basis for a claim under Section 523(a)(2)(A), even if what Plaintiff argues is true, which is not the case.

Plaintiff's motion must be denied as to Count I and Count I must be dismissed.  In addition, given that Plaintiff must proceed under Section 523(a)(2)(B), it is clear that Plaintiff must prove its reliance was reasonable, which is a higher burden than justifiable.

## II.    THE COURT SHOULD DEFER PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NOT ANSWERED DEFENDANT'S DISCOVERY.

Plaintiff's motion is premature.  Under Rule 56 of the Federal Rules of Civil Procedure, which is incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, if a nonmoving party shows that it cannot present facts essential to justify its position, the Court may defer considering the motion or deny it,  allow time to take discovery, or issue any appropriate order.  The Court should, at the least, defer the Plaintiff's motion.

Discovery has been served.  Defendant has been diligent in seeking the discovery, and Defendant is in need of the discovery to determine, among other things, if Plaintiff actually, let alone reasonably, relied on any information provided to it by Defendant.   The argument in the other sections of this memorandum regarding reasonable reliance and related issues is incorporated in this section.

The question of whether a creditor's reliance was reasonable is a question of fact.  *In re DeJulio*, 322 B.R. 456, 462 (Bankr. M.D. Fla. 2005).  The State Court here made no findings of fact regarding reasonable reliance.

11

Defendant, therefore, is in need of discovery regarding Plaintiff's reasonable reliance.

Defendant's discovery requests include the following:

1. All documents that evidence all efforts of Plaintiff to determine Defendant's credit worthiness for all loans that are the subject matter of this litigation.

2. All documents that evidence Plaintiff's claimed damages.

3. A complete copy of Plaintiff's loan file(s) regarding the loans at issue in this litigation, including all officer notes and officer comments.

4. To the extent not produced above, a copy of all Plaintiff's correspondence with any Defendant hereto.

5. To the extent not produced above, a copy of all documents supporting or evidencing Plaintiff's calculation and/or assessment of interest for the loans at issue in this litigation.

6. All documents signed by any Defendant.

7. All documents, including any internal correspondence, including emails, that relate to any Defendant.

8. All documents, including any internal correspondence, including emails, that relate to Visible Customer Holdings, LLC.

9. All documents, including any internal correspondence, including emails, that relate to John Stapleton.

10. Copies of any and all manuals, publications, emails  or guidelines, however created or denominated or stored,   that are used or consulted by you in any way in determining whether or not to grant a loan.

11. Copies of any and all manuals, publications, emails or guidelines, however created, denominated or stored, that are used or consulted by you in any way in determining whether or not to grant an extension or modification of a loan.

12. A complete copy of Plaintiff's loan file(s) regarding the loan made by you to Visible Customer, LLC, including all officer notes and officer comments.

13. Copies of any and all manuals, emails, correspondence or any other material, however denominated, recreated or stored relating to any efforts undertaken by you to secure any type of banking relationship with Curtis Nelson, individually, Marilyn Carlson Nelson, Dr. Nelson, or Carlson Companies.

121294567

14.    All communications with the FDIC regarding the loans identified in your complaint.

See  Exhibit A.

These requests are clearly aimed at discovering relevant and admissible information, such as what, if anything, Plaintiff did in relying on anything provided by Defendant, and information on which its board relied in making the decision to approve the loans.  They are also aimed at discovering the standards to which Plaintiff is subject in making loans in excess of $3,000,000.

Plaintiff's affiant states that Plaintiff "did not extend the $3,000,000 loan to Mr. Nelson based upon his name and lineage."  As discovery is not complete, Defendant cannot evaluate what, if any, information Plaintiff relied upon.  Plaintiff's motion should be denied.

## III.    PLAINTIFF'S RELIANCE WAS NOT REASONABLE.

Plaintiff's recital of facts establishes that it did not reasonably rely on any representation of Defendant.  Reasonable reliance is an element of a Section 523(a)(2)(B) claim and the burden of proof is on the Plaintiff.  *Grogan v. Garner*, 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991).

Plaintiff ignores the importance of the reasonable reliance element in the context of Section 523(a)(2)(B).  This critical element was *dispositive* in *In re Keim*, a case in which despite the debtors' wrongful acts the court found their debt dischargeable.  *In re Keim*, 236 B.R. 400 (8th Cir. B.A.P. 1999).

In *Keim*, the creditors, Richard and Donna Guess, owned a flower shop and sold it to the debtors.  *Id.* at 236 B.R. 401.  The creditors' broker requested a warranty agreement by which the debtors would represent they had sufficient financial resources to purchase the shop, which was provided.  *Id.*  The critical item on the handwritten financial statement was an ownership interest in a building.  *Id.* at 236 B.R. 403.

13

"The bankruptcy court found that the financial statement completed by the debtors and provided to the Guesses was a statement in writing, that it concerned the debtors' financial condition, and that it was materially false." *Id.* at 236 B.R. 402. "The court also found that the debtors intentionally misrepresented their assets and liabilities on the statement for the purpose of deceiving the Guesses." *Id.* "However, the court found that the Guesses plainly failed to prove that they reasonably relied on the false financial statement, and that therefore the debt was not excepted from the debtors' discharge by operation of § 523(a)(2)(B)." *Id.*

As noted, the critical item was the ownership interest in the building:

The bankruptcy court found that the Guesses deemed the debtors secure buyers almost exclusively on the basis of the ownership interest in the Three Oaks Building. *The court held that at a minimum, therefore, the Guesses should have required some type of proof of that ownership interest and some evidence as to the accuracy of the value of the interest.* The bankruptcy court also determined that the fact that the interest was a part interest, and the fact that the value of the interest or building was estimated, were red flags that would have alerted an ordinarily prudent lender to conduct at least a minimal investigation into the veracity of the representations.

*Instead, the Guesses conducted no investigation at all as to the accuracy of the representations made in the debtors' financial statement.* Applying the totality of the circumstances test, the bankruptcy court held that the Guesses' blind reliance on a purchaser's financial statement was not reasonable and accordingly did not satisfy the requirements of § 523(a)(2)(B) to make a debt nondischargeable.

*Id.* at 236 B.R. 403(emphasis added).

In *In re Keim,* the creditors owned a flower shop. Here, Plaintiff is a bank, an experienced lender that according to its website was ranked as the "No. 1 commercial bank" in the Twin Cities. Plaintiff, therefore, under the totality of the circumstances, should be held to a much higher standard than the flower shop owners in *In re Keim.*

According to Plaintiff, it lent $3,800,000 based on Defendant's word. Plaintiff's facts are as follows:

14

1.      It made a $3,800,000 loan based on a single financial statement that was a year-old, without verifying anything contained in the statement.

2.      It renewed the loan based on the Defendant pledging a coin collection.  <u>See</u> Plaintiff's Memo at p. 5, ¶ 21.

3.      This renewal was based on unspecified representations by Defendant as to the value of the collection, and a three-sentence "appraisal" of the coin collection that was not ordered by Plaintiff, but was provided by Defendant.  <u>Id</u>.

4.      Plaintiff never had anyone actually look at the coin collection.

5.      Plaintiff's agent stated it was not relying on the coin collection.  <u>See</u> Exhibit C.

6.      Plaintiff claims it relied on Defendant's statements regarding the value of his homes.  Plaintiff has provided no evidence that it actually relied on this valuation.  In addition, for a loan in excess of $3,000,000 where a bank is relying on real property as potential collateral, as the bank now claims it was, it is not reasonable for the bank to not get an appraisal or documentation regarding liens against the property.  The bank did not even review the tax value of the property, which is a simple, routine and cursory thing to do.  Here, the bank did not verify anything until long after the loan was made, and in default.

7.      Plaintiff claims it relied on Defendant's statements regarding investment accounts, yet never, until after this lawsuit was started, did it request or obtain any actual written account statements.

8.      Defendant offered to obtain subordination from his family members and trusts of their loan rights to those of Plaintiff.  Plaintiff never pursued this subordination, and cannot now say that omitting certain loans from a financial statement was fraudulent.  Even if Plaintiff was not aware of these loans, which is denied, it suffered no damage because it would not have

121294567

pursued subordination of such loans.  This is clear because Plaintiff had the chance to do so, and ignored it.

It is simply unreasonable for a bank, under any circumstances, to rely solely on a customer's valuation of collateral or information provided by a customer in making a loan.  It is even more unreasonable for a bank to do so when the loan is a very large loan, in excess of $3,000,000.  At the very least, there is a question of fact regarding the reasonableness of the bank's alleged reliance.

In addition, according to Plaintiff, the original loan was made based solely on a financial statement provided on July 28, 2008, nothing of which was verified by the Plaintiff.  However, that financial statement was already one year old, it was actually a statement of the Defendant's financial condition in July 2007, and the first page only references that the attached statement accurately shows his financial condition "at the time indicated."  The "time indicated" was one year prior to the statement given to the bank.

"[A] creditor 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.' "  *Field v. Mans*, 516 U.S. 58, 74-75 , 116 S.Ct. 437, 446 (1995).  *Field v. Mans* was a case under Section 523(a)(2)(A), which had a *lower standard of proof* on reliance.   Here, even under the lower standard, the simple fact that the financial statement was one year old was enough to cause the Plaintiff to not blindly rely on it.

The Plaintiff has not demonstrated that there is no genuine issue of material fact regarding whether or not it reasonably relied on a year-old financial statement, with no verification whatsoever, in making a loan in excess of $3,000,000.  Plaintiff's motion, therefore, must be denied.

121294567

## IV.   PLAINTIFF'S RELIANCE ON THE ORIGINAL FINANCIAL STATEMENT WAS UNREASONABLE.

Plaintiff argues there were no "red flags" in anything provided by Defendant that would cause a bank subject to State and Federal lending regulations to inquire further when making a $3,000,000 loan.  A cursory review of the financial statement reveals that this is not the case.

Under "Long Term Liabilities" the total is listed as $6,685,423.94, but the total is actually $13,685,423.94.  Under current liabilities, there are taxes owed of $2,924,000.  The largest asset is apparently a condominium holding company.  This financial statement was made in 2007, provided in 2008, and in the intervening year between 2007 and 2008, as is widely known, the value of individual real properties in the Twin Cities area plummeted.  This should have caused the Plaintiff to inquire further into the value of this asset, as well as the value of other real property such as the Defendant's  homestead.  Moreover, it is simply not reasonable for a bank to not inquire further as to all assets listed when there are almost $3,000,000 in taxes owed.

## V.   PLAINTIFF'S RELIANCE ON THE MARCH 11, 2009 STATEMENT WAS ALSO UNREASONABLE.

It is similarly incredible that a bank would argue that it reasonably relied, without any verification, on a financial statement such as Plaintiff's Exhibit D.  At a minimum, it is a genuine issue of material fact as to the required element of reasonable reliance.

The first glaring red flag that should have immediately caused concern was the single largest asset on this financial statement.  Curtis Co. One, LLC-Equity was listed as worth $9,849,459.82 but as "Totally Illiquid-Negative Cash Flow."   The second is "Deferred Comp and CCI Legacy" at $935,000.  Neither of these was on the earlier financial statement, and the "Totally Illiquid-Negative Cash Flow" line item should have, at the very least, caused the Plaintiff to inquire further.  The third glaring issue was, again, $2,670,429 in income taxes owed.

17

Summing these entries up, under the totality of the circumstances, they clearly put Plaintiff on inquiry notice to actually verify items in the financial statement.

## VI.    THE FACTS FOUND BY THE STATE COURT ARE NOT ENOUGH TO FIND THAT COLLATERAL ESTOPPEL APPLIES HERE.

Plaintiff's reliance on the State court's order for the application of collateral estoppel is misplaced.  The question of dischargeability is a question of Federal law.  In a Section 523 action based on a judgment in a State court action, the bankruptcy court is only bound by the specific factual findings in the underlying action, but the bankruptcy court is to determine if the facts meet the legal requirements of the plaintiff's theory.  *See In re Cochrane*, 179 B.R. 628,  630 (Bankr. D. Minn. 1995).

To establish collateral estoppel, the party asserting it must demonstrate that (1) the issues in question was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the subject party was a party or in privity with a party to the prior adjudication; and (4) the subject party was given a full and fair opportunity to be heard on the adjudicated issue. *Minn. Trust Co. of Austin v. Yanke*, 225 B.R. 428, 435 (Bankr. D. Minn. 1998). Collateral estoppel is an equitable doctrine that is not to be rigidly applied.  *Hauschildt v. Beckingham*, 686 N.W.2d 829, 837 (Minn. 2004).  Rather, the court's focus must be on whether application of the doctrine would work an injustice "on the party against whom the estoppel is urged." *Id.*; *Barth v. Stenwick*. 761 N.W.2d 502, 508 (Minn. Ct. App. 2009) (emphasis added).  Minnesota courts have long recognized the distinction between defensive and offensive collateral.  *See McCarty v. Budget-Rent-a-Car*, 165 N.W.2d 548, 551 (Minn. 1969).  Indeed, from the first, Minnesota courts have cautioned reserve in applying offensive collateral estoppel. *Yanke*, 225 B.R. at 436 (Bankr. D. Minn. 1998); *McCarty*, 165 N.W.2d at 551.  For these reasons, the party urging

121294567

collateral estoppel bears the burden of proof.  *Barth*, 761 N.W.2d at 508.  Here, Plaintiff has failed to meet that burden.

**A.     The issues are not identical and the State Court's factual findings are insufficient to establish the elements required by Section 523(a).**

To apply collateral estoppel, the issues in the prior action must be <u>identical</u> to the issues in the current action.  *Yanke*, 225 B.R. at 435.  Reasonable reliance is an element of a Section 523(a)(2)(B).  *Grogan*, 498 U.S. at 287-88.  There is no such element for establishing grounds for a pre-judgment attachment under Minn. Stat. § 570.02(4).  In fact, the State court here made no finding whatsoever that Plaintiff's reliance on anything Defendant said or any information he provided was reasonable.  Indeed, as discussed above, a review of the findings made could lead one to the opposite conclusion, that Plaintiff's reliance was unreasonable as a matter of law.

In its order, drafted by Plaintiff's counsel, the State court also did not make a finding of intent.  This is a question of fact.  *Pauling v. Pauling*, 159 F.2d 531, 535 (8th Cir. 1947).  There was no testimony about intent and the State court made no factual finding regarding Defendant's intent, or of Plaintiff's reasonable reliance.

Moreover, Plaintiff convolutes the role of factual findings and legal conclusions in application of collateral estoppel to a bankruptcy proceeding.  This court only looks to the prior court's factual findings, while reserving for itself the determination of whether those findings "meet the *precise legal requirements* of the theory of nondischargeability on which the creditor relies." *In re Cochrane*, 179 B.R. at 630.  Plaintiff hangs much of its argument on the State court's <u>legal</u> conclusion that Defendant committed an "intentional fraud" without discussing the elements that were necessary for the court to reach its conclusion or whether those elements are the same as those in the instant matter.  Indeed, Plaintiff's brief on this point cites only conclusions of law with respect to the elements that underlie the state court's finding of

121294567

"intentional fraud." *See* Pl.'s Memorandum of Law at pp. 12-14. Even in its discussion regarding the elements at issue here, Plaintiff frequently attempts to apply the state court's legal conclusion to satisfy the elements of Section 523. *See id.* at 15-17.

In short, Plaintiff fails to address whether the standards for obtaining prejudgment attachment are identical to the standards for nondischargability under Section 523(a); they are not and the State Court's order is not sufficient for collateral estoppel to be applied by this Court.

### B.     The Plaintiff's collateral estoppel argument is generally without merit.

Plaintiff's entire collateral estoppel argument under Section 523(a)(2)(A), in pages 14 and 15 of its memorandum, is based on alleged "oral false statements related to the nature and value of [the] coin collection."   As a matter of law, these statements, even if true, are statements regarding the Debtor's financial condition. It is irrelevant, therefore, to a claim under Section 523(a)(2)(A). Furthermore, Plaintiff continually relies on the State Court's conclusions of law, which are not binding on this Court. This alone demonstrates the lack of merit of Plaintiff's argument.

Plaintiff's argument under Section 523(a)(2)(B), in pages 16 and 17 of its memorandum, is equally inapplicable. Again, Plaintiff relies on conclusions of law, not findings of fact. The Plaintiff also relies on *In re Schnuelle*, but a review of that case shows Plaintiff's reliance is misplaced.

Plaintiff, on the bottom of page 16, correctly states that the State Court found that Plaintiff "relied" on the Defendant's alleged representations. However, this is far from a factual finding of "reasonable reliance" in the form required under Section 523(a)(2)(B). Second, *In re Schnuelle* involved a *trial*, not summary judgment. Plaintiff cites this case for the proposition that "Although a creditor is supposed to look for 'red flags,' a creditor is not put on notice that

121294567

there are misstatements merely because a document contains a misstatement." See Plaintiff's Memorandum at p. 16, citing *In re Schnuelle,* 441 B.R. at 624.

Plaintiff's reading of *In re Schnuelle* is an exercise in fiction.  In that case, the 8th Circuit Bankruptcy Appellate Panel cited *In re Colston, supra,* stating that a court may consider whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, *or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations*. *In re Schnuelle,* 441 B.R. at 624.  The court then simply stated that the bankruptcy court agreed with the plaintiff, not the defendant, and that doing so was not error. *Id*

The 8th Circuit Bankruptcy Appellate Panel did **not** hold that "a creditor is not put on notice that there are misstatements merely because a document contains a misstatement" as Plaintiff would have this Court believe.  Quite the contrary, it held the opposite, but simply found that the plaintiff was not put on notice of anything wrong.  Here, that is not the case, Plaintiff had notice, and its motion should be denied.

## VII. PLAINTIFF SUFFERED NO LOSS AS A RESULT OF THE PLEDGE OF THE COIN COLLECTION.

Plaintiff argues that because the Defendant allegedly misrepresented the value of a coin collection, it has suffered a loss of $3,800,000; this is not factually or legally correct.  Plaintiff did not rely on the coin collection in making any decision to loan funds to Defendant.

In extending the loan, Plaintiff never had anyone review the coin collection prior to "relying" on it as collateral as part of the extension of the loans.  It has not alleged or even shown that as a result of the extension, Plaintiff lost any valuable collection remedies or suffered any

121294567

further loss.   Indeed, regardless of the value of the coin collection, Plaintiff received more that it had prior to the extension of the maturity date.

"If no new money is advanced, and a creditor renews a loan relying on a false financial statement, but suffers no detriment, § 523(a)(2)(B) does not apply."  See In re Duncan, 123 B.R. 383, 386 (Bankr. C.D. Cal. 1991).

A section 523 plaintiff must make a showing that the alleged " 'fraud existed at the time of, and had been the methodology by which, the money property or services were obtained.' " See In re Capelli, 261 B.R. 81, 88 (Bankr. D. Conn. 2001)(citing In re Woodall, 177 B.R. 517, 523 (Bankr. D. Md. 1995).  "Misrepresentations that are made subsequent to the creation of the debt 'have no effect upon the dischargeability of a debt, since the false representation could not have been the creditor's reason for the extension of credit.' "  Id.   "That is to say, the 'funds themselves must have been obtained by fraud in the inception.' "  See In re Capelli, 261 B.R. at 88(citing In re Slominsky, 229 B.R. 432, 435 ( Bankr. N.D. D. 1998).

Here, the coin collection was pledged long after Plaintiff loaned the money.  As a matter of law, it cannot be the basis for a finding that the Plaintiff was fraudulently induced to loan funds to the Defendant.

## VIII.  PLAINTIFF DID NOT REASONABLY ON DEFENDANT'S VALUATION OF HIS HOMESTEAD.

As noted above, the original financial statement was already one year old when Plaintiff allegedly relied on it.   The real estate market had plummeted over that one-year period.  Plaintiff never took a mortgage on the real property, never had an appraisal done, and according to its own affiant it never even did an owners and encumbrance search to see what the equity in the house would be.  There is clearly a question of fact regarding the Plaintiff's reliance, its motion should be denied.

121294567

## IX.   THERE IS A GENIUNE ISSUE OF MATERIAL FACT AS TO DAMAGES

This was a loan, according to Plaintiff's Complaint, on which payments were made for two years.  After the parties agreed to the judgment in State Court, Plaintiff obtained funds from its sale of the coins, it foreclosed on the assets of Visible Customer, and it received $500,000 from John Stapleton.  Plaintiff has not accounted for these funds.

## <u>CONCLUSION</u>

The Defendant respectfully requests that the Court deny Plaintiff's motion.

HINSHAW & CULBERTSON LLP

Dated: September 30, 2011          By:     /e/ Thomas G. Wallrich
Thomas G. Wallrich  (213354)
Peter L. Crema, Jr. (218868)
Joel D. Nesset (030475X)
Accenture Tower
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Telephone:  612-333-3434
Fax:  612-334-8888

Attorneys for Defendant

121294567

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    BKY Case No. 11-43113 RJK

Curtis C. Nelson,

     Debtor.


Crown Bank,                                               Adv. No. 11-4196

     Plaintiff,

vs.

Curtis C. Nelson,

     Defendant.


UNSWORN DECLARTION OF THOMAS G. WALLRICH


I, Thomas G. Wallrich, counsel for the Defendant, declare under penalty of perjury that the

foregoing is true and correct.

  1.  Attached as Exhibit A are true and correct copies of discovery we served in this matter on the Plaintiff.

  2.  Attached as Exhibit B are true and correct copies of Plaintiff's responses to Defendant's discovery.

  3.  Attached as Exhibit C is a true and correct copy of an email from Kevin Busch to me. Mr. Busch is an attorney at Moss & Barnett and represented Crown Bank in negotiations regarding Defendant and the bank.

  4.  Without the Plaintiff responding to our discovery in this matter, I do not believe we can present essential facts to Defendant's opposition to Plaintiff's motion for summary judgment. The discovery was pursued diligently, and Plaintiff's motion was filed with a response time that is prior to Plaintiff's discovery being due.

  5.  In the discovery, we seek information that will assist the Defendant in defending this motion, including a copy of Plaintiff's loan files, which should included internal

121294567

communications regarding Defendant and officer notes regarding actions taken by the bank on the loans.   We also seek communications between the bank and the FDIC, which should include the bank's justifications to the FDIC on why it made the loans at issue.  The response to this request for the production of documents should include statements of what information Plaintiff relied on in determining to make the loans.

6.     We have also sought all information related to any guidelines under which the Plaintiff operates in determining to make loans.  All of this information is relevant to Defendant's defense, including the issue of Plaintiff's reasonable reliance.

Dated:  September 30, 2011          /s/ Thomas G. Wallrich
                                                      Thomas G. Wallrich

121294567

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:                                                    Chapter 11 Case

Curtis C. Nelson,
                                                          BKY File No. 11-43113
                    Debtor.

_____

Crown Bank,

                    Plaintiff,
vs.                                                       ADV File No. 11-4196

Curtis C. Nelson,

                    Defendant.

_____

## <u>DEFENDANT'S REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF</u>

_____

TO:   Plaintiff, and their attorney David B. Galle, Oppenheimer Wolff & Donnelly LLP,
      Plaza VII, Suite 3300, 45 South Seventh Street, Minneapolis, MN 55402-
      1609.

### REQUEST FOR PRODUCTION OF DOCUMENTS

It is hereby requested pursuant to Fed. R. Civ. P. 34, as incorporated by Fed. R. Bankr. P.

7034, that you produce at the Hinshaw & Culbertson LLP, within 30 days of service of this

Request, the following:

### IDENTIFICATION OF PRIVILEGED DOCUMENTS

If any of the documents requested below are claimed by you to be privileged, you are

requested for each such document to state the nature of the privilege claimed by specifying its

title or identifying date; the identify of its author or authors, the parties to it, and all persons who

helped in its preparation; it date, or, if no date appears on it, the approximate date of its creation;



EXHIBIT

A

its exact nature and substance; the identity of each person having possession, care, custody, or control of the original and any copies thereof; and the identity of each person to whom the contents have been disclosed.

## IDENTIFICATION OF DESTROYED DOCUMENTS

If any of the documents requested below have been destroyed or otherwise discarded, you are requested to identify the document destroyed or discarded in the same manner as identification is requested for "privileged" documents.

## INSTRUCTIONS

1.    In producing the requested documents, please either identify the request number(s) to which each document is responsive or produce them as they are maintained in the ordinary course of business.

2.    If you object to any document request in whole or in part, state whether you have withheld production of any documents or things pursuant to such objection, and identify each document or thing so withheld.

3.    This request for documents extends to all responsive nonprivileged documents.  If any document or part thereof is withheld pursuant to a claim of privilege, please identify for each such document (i) the type of document (e.g., letter, memorandum, etc.), its date, author, and addressee and other recipients; (ii) the number of pages in the document; (iii) a general description of the subject matter of the document; and (iv) the privilege being claimed and the basis for withholding the document under that privilege.

4.    These document requests shall be deemed continuing in nature and require you to supplement your answers.

121287519v1 0906146 72096

## DEFINITIONS

1.      As used herein, the terms "you" and "your" refer to Defendant Crown Bank and any of its officers, directors, employees, accountants, attorneys and agents.

2.      As used herein, the term "document" shall include any handwritten, typed, printed, drawn, recorded, machine readable or graphic matter of any kind, however produced or reproduced, including without limitation letters and other correspondence, telegrams, memoranda, reports, studies, analyses, data, books, affidavits, articles, photographs, photostats, motion pictures, micro-film, agreements, contracts, calendars, diaries, scrapbooks, plans, minutes, maps, graphs, tables, transcripts and tapes of speeches or statements, publications of any kind whatsoever, recordings, audio or video tapes, opinions, evaluations, statistical records, notes, summaries, tabulations, work papers, cost sheets, canceled checks, financial reports and statements, bookkeeping and accounting records of all types, computer generated and stored materials and computer data, including computer memory units containing data, and tangible things, however denominated.  A photocopy, which bears any markings different from the original, shall be considered a separate document.

3.      The use of the singular form of any word includes the plural and vice versa.

4.      "Or" as used in these document requests shall mean both "and" and "or"; "and" as used in these document requests shall mean both "or" and "and".

5.      "Referring to" or "relating to" means concerning, describing, evidencing, constituting or in any way touching upon the subject matter of the interrogatory or document request.

6.      "Person" means any individual, firm, partnership, association, corporation, joint venture, or other legal business or governmental entity.

3

## **REQUEST FOR PRODUCTION OF DOCUMENTS**

1.     All documents related to all payments received and all interest charged on the loans identified in your complaint.

2.     All of the documents identified in your Answers to the Interrogatories served upon you contemporaneously herewith.

3.     All of the documents consulted, reviewed, or in any way used in preparing your Answers to the Interrogatories served upon you contemporaneously herewith.

4.     All statements, as defined by Federal Rule of Civil Procedure 26, made by parties or non-parties concerning the above action or its subject matter.

5.     All items that may be offered as exhibits in the trial of this lawsuit.

6.     All documents and exhibits that in any way relate to the allegations contained in Plaintiff's Complaint or in any Defendant's Answer thereto.

7.     A copy of all resumes relating to each person whom you expect to call as an expert witness at the trial of this matter.

8.     A copy of all publications, papers, and treatises in your possession, custody, or control, which are authored by each person whom you expect to call as an expert witness at trial.

9.     All contracts and agreements between you and any Defendant hereto, including all extension agreements and modifications, whether verbal or written, thereto.

10.    All documents that evidence all efforts of Plaintiff to mitigate its damages.

11.    All documents that evidence all efforts of Plaintiff to determine Defendants' credit worthiness for all loans that are the subject matter of this litigation.

12.    All documents that evidence Plaintiff's claimed damages.

121287519v1  0906146  72096

13.    A complete copy of Plaintiff's loan file(s) regarding the loans at issue in this litigation, including all officer notes and officer comments.

14.    To the extent not produced above, a copy of all Plaintiff's correspondence with any Defendant hereto.

15.    To the extent not produced above, a copy of all documents supporting or evidencing Plaintiff's calculation and/or assessment of interest for the loans at issue in this litigation.

16.    All documents signed by any Defendant.

17.    All documents, including any internal correspondence, including emails, that relate to any Defendant.

18.    All documents, including any internal correspondence, including emails, that relate to Visible Customer Holdings, LLC.

19.    All documents, including any internal correspondence, including emails, that relate to John Stapleton.

20.    Copies of any and all manuals, publications, emails or guidelines, however created or denominated or stored,   that are used or consulted by you in any way in determining whether or not to grant a loan.

21.    Copies of any and all manuals, publications, emails or guidelines, however created, denominated or stored, that are used or consulted by you in any way in determining whether or not to grant an extension or modification of a loan.

22.    A complete copy of Plaintiff's loan file(s) regarding the loan made by you to Visible Customer, LLC, including all officer notes and officer comments.

23.    Copies of any and all manuals, emails, correspondence or any other material, however denominated, recreated or stored relating to any efforts undertaken by you to secure any type of banking relationship with Curtis Nelson, individually, Marilyn Carlson Nelson, Dr. Nelson, or Carlson Companies.

24.    All communications with the FDIC regarding the loans identified in your complaint.

Dated: August 30, 2011

HINSHAW & CULBERTSON LLP

By:

Thomas G. Wallrich (213354)
Peter L Crema (218868)
Accenture Tower
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434
Fax: 612-334-8888

Attorneys for Defendant Curtis C. Nelson

6

## AFFIDAVIT OF SERVICE

STATE OF MINNESOTA   )
                          ) ss.
COUNTY OF HENNEPIN  )

      Patricia A. Walsh of the City of Minneapolis, County of Hennepin in the State of Minnesota, being duly sworn says that on the 30th day of August, 2011, she served the following:

1.     Defendant's Interrogatories to Plaintiff; and
2.     Defendant's Request for Production of Documents to Plaintiff

by facsimile and U.S. mail, enclosed in an envelope, postage prepaid, by depositing same in the post office at Minneapolis, Minnesota, directed to said party at his last known address, as follows:

      David B. Galle
      Oppenheimer, Wolff & Donnelly LLP
      Plaza VII
      Suite 3300
      45 South Seventh Street
      Minneapolis, MN 55402-1609
      FAX: 612-607-7100

                                   Patricia A. Walsh

Subscribed and sworn to before me
this 30th day of August, 2011.



Notary Public

JODIE M. AUDETTE
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

121287942v1  0906146  72096

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

In re:                                                      Chapter 11 Case

Curtis C. Nelson,

                        Debtor.                             BKY File No. 11-43113

_____

Crown Bank,

                Plaintiff,

vs.                                                         ADV File No. 11-4196

Curtis C. Nelson,

                Defendant.

_____

### **DEFENDANT'S INTERROGATORIES TO PLAINTIFF**
_____

TO:   Plaintiff, and their attorney David B. Galle, Oppenheimer, Wolff &
      Donnelly LLP, Plaza VII, Suite 3300, 45 South Seventh Street,
      Minneapolis, MN 55402-1609.

PLEASE TAKE NOTICE that Defendant requires of Plaintiff answers under oath to the

following Interrogatories within thirty (30) days from the date service hereof pursuant to Fed R.

Civ. P. 33, as incorporated by Fed. R. Bankr. P. 7033.

In answering these Interrogatories furnish such information as is available to you,

however obtained, including hearsay information known by, or in the possession of your agents,

including your attorney.   If any Interrogatory cannot be answered in full after exercising due

diligence to secure the information, answer to the extent possible, specifying your inability to

answer the remainder, stating whatever information and knowledge you have concerning the

unanswered portion, and detailing what you did in attempting to secure the unknown

121287514v1 0906146 72096

information.  These interrogatories are deemed to be continuing so as to require supplemental answers if additional information is obtained between the time the answers are served and the time of trial.

## INSTRUCTIONS

1.      When used with respect to a document, "identify" means to state for each document (i) the type of document (e.g., letter, memorandum, etc.), its date, author, addressee and other recipients; (ii) the number of pages in the document; and (iii) a general description of the subject matter of the document.

2.      When used with respect to an individual, "identify" means to state an individual's name, current or last known address and telephone number, current or last known employer, title or position and a brief description of duties and responsibilities.

3.      When used with respect to a communication, "identify" means to state the identity of the senders and recipients, the date of the communication, identification of all documents constituting, relating to or referring to the subject communication and summarizing the contents thereof.

4.      If you object to or otherwise do not respond to any interrogatory or request for admission, in whole or in part, set forth the nature and basis for the objection or other failure or refusal to respond in sufficient detail to enable the court to determine the propriety of such objection or failure or other refusal to respond, and state whether any information is being withheld on the basis of the objection.

5.      These interrogatories shall be deemed continuing in nature and require you to supplement your answers.

2

## DEFINITIONS

1.      As used herein, the terms "you" and "your" refer to Defendant Crown Bank any of its officers, directors, employees, accountants, attorneys and agents.

2.      As used herein, the term "document" shall include any handwritten, typed, printed, drawn, recorded, machine readable or graphic matter of any kind, however produced or reproduced, including without limitation letters and other correspondence, e-mails, telegrams, memoranda, reports, studies, analyses, data, books, affidavits, articles, photographs, photostats, motion pictures, micro-film, agreements, contracts, calendars, diaries, scrapbooks, plans, minutes, maps, graphs, tables, transcripts and tapes of speeches or statements, publications of any kind whatsoever, recordings, audio or video tapes, opinions, evaluations, statistical records, notes, summaries, tabulations, work papers, cost sheets, canceled checks, financial reports and statements, bookkeeping and accounting records of all types, computer generated and stored materials and computer data, including computer memory units containing data, and tangible things, however denominated.   A photocopy, which bears any markings different from the original, shall be considered a separate document.

3.      The use of the singular form of any word includes the plural and vice versa.

4.      "Or" as used in these interrogatories shall mean both "and" and "or"; "and" as used in these interrogatories shall mean both "or" and "and".

5.      "Referring to" or "relating to" means concerning, describing, evidencing or tending to evidence, pertaining, consisting of, constituting or in any way touching upon the subject matter of the interrogatory or having any logical or factual connection with the matter discussed.

6.      "Person" means any individual, firm, partnership, association, corporation, joint venture, or other legal business or governmental entity.

3

7.      "Describe" shall mean to specify in detail and to particularize the content of the answer and not just to state it in summary or outline fashion.

8.      "Communication" means all forms of communication whether in person or otherwise, written or oral, or by telephone, e-mail, telex, facsimile or other means.

## INTERROGATORIES

1.      Identify each and every person that has knowledge relating to the facts contained in Plaintiff's complaint, or any answer thereto.

2.      Identify each and every person that provided information or assistance in responding to these Interrogatories, or who was consulted or assisted in compiling documents in response to Defendant's Request for Production of documents served contemporaneously herewith.

3.      Identify each and every person consulted by you in answering these Interrogatories, or Request for Production of Documents served upon you contemporaneously herewith.

4.      Identify every expert you have consulted or employed in this proceeding.

5.      Identify every member of a loan committee, or similar group, that participated in the loan decision to grant a loan, or loans, to Visible Customer, LLC.

6.      Identify each and every person that participated in a loan committee, or similar group, however designated, that participated in any decision to extend, modify, or refused to extend or modify any and all loans previously granted to Visible Customer LLC.

7.      Identify each and every person that participated in a loan committee, or similar group, however designated, that participated in determining to grant a $3,000,000.00 loan to Curtis C. Nelson.

4

8.      Identify each and every person that participated in a loan committee,  or similar group, however designated, that participated in the determining to grant  a $130,000.00 loan to Curtis C. Nelson.

9.      Identify each and every person that analyzed, reviewed or commented on the personal financial statement originally submitted by Curtis C. Nelson in support of his request for a $3,000,000.00 loan.

10.     Identify each and every person that reviewed property tax records or other valuations for the real property identified in Curtis C. Nelson's financial statement before determining to grant the $3,000,000.00 loan.

11.     Describe with specificity any deviations from standard loan procedures in determining to grant a loan to Curtis C. Nelson based upon the personal financial statements he provided.

12.     Describe with specificity the value generated or placed by the bank on the Visible Customer stock owned by Curtis C. Nelson and identified in his personal financial statement.

13.     Identify all individuals assigned to examine or oversee Crown Bank on behalf the FDIC.

14.     Identify all documents in your possession or control signed by the Defendant.

15.     Identify all documents in your possession related to John Stapleton.

16.     Identify all documents on which you rely in making the allegations contained in your complaint.

5

Dated:  August 30, 2011

HINSHAW & CULBERTSON LLP

By: _____

Thomas G. Wallrich (213354)
Peter L. Crema (218868)
Accenture Tower
333 South Seventh Street
Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434
Fax: 612-334-8888

Attorneys for Defendant Curtis C. Nelson

121287514v1 0906146 72096

# OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP

Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402-1609
www.Oppenheimer.com

## FAX COVER LETTER

### September 29, 2011

**TO:**          PETER L. CREMA, JR.
**COMPANY:**      Lockridge Grindal Nauen, PLLP
**PHONE:**
**FAX:**          (612) 334-8888

**FROM:**         Elizabeth Patton
**DIRECT DIAL:**  (612) 607-7202
**EMAIL**         EPatton@oppenheimer.com
**RE:**

## PLEASE SEE ATTACHED LETTER AND DOCUMENTS.

This facsimile contains confidential information intended only for the use of the addressee(s) named above and may contain information that is legally privileged. If you are not the addressee, or the person responsible for delivering it to the addressee, you are hereby notified that reading, disseminating, distributing or copying this facsimile is strictly prohibited. If you have received this facsimile by mistake, please immediately notify us by telephone and return the original message to us at the address above via the Postal Service (we will reimburse postage). Thank you.

Originals:

Completed by:

You should receive _____ page(s) including this page.
If the transmission is incomplete, please call 612.607.7276 as soon as possible.

**EXHIBIT**

tabbies®

*B*

# OPPENHEIMER

OPPENHEIMER WOLFF & DONNELLY LLP

Elizabeth A. Patton
Oppenheimer Wolff & Donnelly LLP
Plaza VII, Suite 3300
45 South Seventh Street
Minneapolis, MN 55402-1609

612.607.7000
Fax 612.607.7100

Direct Dial:   (612) 607-7202
E-Mail:       EPatton@oppenheimer.com


September 29, 2011


Peter L. Crema, Jr.
Hinshaw & Culbertson LLP
Accenture Tower, Suite 2000
333 South Seventh Street
Minneapolis, MN 55402

**Re:**   **In re Curtis C. Nelson, Debtor**
       **BKY File No. 11-43113**

Dear Mr. Crema:

Enclosed and served upon you are the following:

1.     Crown Bank's Responses to Defendant's Interrogatories; and
2.     Crown Bank's Responses to Defendant's Request for Production of Documents.

We are in the process of preparing the responsive documents for production. Also, we received documents pursuant to a third party subpoena served on Trade Station Securities, Inc. Please advise if you would like copies of these documents.


Sincerely,

*Elizabeth Patton*

Elizabeth Patton


EP:kh
Enclosures

2899604 v01 09/29/2011

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                              Bky. No. 11-43113(RJK)

Curtis C. Nelson,                                   Chapter 11

                      the debtor.

Crown Bank,

                      Plaintiff,

                                                    Adv. No. 11-04196
v.

Curtis C. Nelson,

                      Defendant.

## RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

TO:   Defendant Curtis C. Nelson and Peter L. Crema, Jr., Hinshaw & Culbertson LLP,
      333 South Seventh Street, Suite 2000, Minneapolis, MN 55402-2431

      Pursuant to the Federal Rules of Civil Procedure, Plaintiff responds to Defendant's

Requests for Production of Documents ("Requests") as follows:

### GENERAL OBJECTIONS

      Plaintiff Crown Bank ("Plaintiff") for its Objections and Responses to Defendant's

Requests for Production of Documents, state that these responses are made without in any way

waiving or intending to waive, but on the contrary, intending to preserve and preserving the right

to object to each request for production of documents propounded by Defendant.

      1.    Plaintiff objects to the Definitions and Instructions, and to each of the Requests,

to the extent each purports to require Plaintiff to provide information or take action beyond that

contemplated by the Federal Rules of Civil Procedure or the Local Rules of Bankruptcy

Procedure.

2. Plaintiff objects to each Request to the extent it seeks information protected by the attorney-client privilege and/or the work product doctrine.

3. Plaintiff objects to each of the Requests to the extent it is overbroad, unduly burdensome, or seeks information that is irrelevant and/or not reasonably calculated to lead to the discovery of admissible evidence.

4. To the extent that Plaintiff responds to these Requests, such responses should not be construed as a representation or admission that the information provided in the response is relevant or admissible at trial.

5. Plaintiff reserves the right to amend, supplement, or modify their responses to these Requests based upon continuing investigation and discovery.

6. Plaintiff objects to these Requests to the extent they seek disclosure of information not in Plaintiff's possession or control.

7. Plaintiff objects to the definitions of "document," "electronic data," and "telephone records" because they are overly broad and to the extent that they would impose an obligation differing from that set forth in the Federal Rules of Civil Procedure.

8. Plaintiff objects to the definitions of "Financial Statements," "Offer," and "Strategic Alternative" because they are overbroad, vague, and ambiguous.

9. Each of these General Objections is incorporated in Plaintiff's responses to each of the Requests below.

10. Plaintiff reserves the right to amend, modify, or supplement these Objections and Responses.

## RESPONSES

**REQUEST NO. 1:** All documents related to all payments received and all interest charged on the loans identified in your complaint.

**RESPONSE:**

2

Plaintiff objects to this Request as overly broad and unduly burdensome. Plaintiff further objects on the ground that it this Request seeks information that is unlikely to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 2:**    All documents identified in your Answers to the Interrogatories served upon you contemporaneously herewith.

**RESPONSE:**

Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 3:**    All of the documents consulted, reviewed, or in any way used in preparing your Answers to the Interrogatories served upon you contemporaneously herewith.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 4:**    All statements, as defined by Federal Rule of Civil Procedure 26, made by parties or non-parties concerning the above action or its subject matter.

**RESPONSE:**

Plaintiff refers Defendant to the pleadings in this action and the state court action as well as the documents produced pursuant to Crown Bank's Responses to Defendant's Request for Production of Documents.

**REQUEST NO. 5:**    All items that may be offered as exhibits in the trial of this lawsuit.

**RESPONSE:**

Plaintiff objects to this Request on the ground that it seeks information protected by the work-product doctrine. Subject to and without waiving its objection, Plaintiff states that it has not yet identified its trial exhibits. Plaintiff states that it will comply with any provisions of the Court's Scheduling Order requiring disclosure of trial exhibits.

**REQUEST NO. 6:**   All documents and exhibits that in any way relate to the allegations contained in Plaintiff's Complaint or in any Defendant's Answer thereto.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff further objects to this Request as overly broad and unduly burdensome. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request.

**REQUEST NO. 7:**   A copy of all resumes relating to each person whom you expect to call as an expert witness at the trial of this matter.

**RESPONSE:**

Plaintiff objects to this Request on the ground that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving its objections, Plaintiff states that it will comply with any provisions of the Court's Scheduling Order requiring disclosure of expert witnesses.

**REQUEST NO. 8:**   A copy of all publications, papers, and treatises in your possession, custody, or control, which are authored by each person whom you expect to call as an expert witness at trial.

**RESPONSE:**

Plaintiff objects to this Request on the ground that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving its

objections, Plaintiff states that it will comply with any provisions of the Court's Scheduling Order requiring disclosure of expert witnesses.

**REQUEST NO. 9:**    All contracts and agreements between you and any Defendant hereto, including all extension agreements and modifications, whether verbal or written, thereto.

**RESPONSE:**

Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 10:**  All documents that evidence all efforts of Plaintiff to mitigate its damages.

**RESPONSE:**

Plaintiff objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.  Plaintiff further objects to the phrase "mitigate its damages" as vague and ambiguous.  If Defendant will define what is meant by this phrase in the context of this litigation, Plaintiff will respond in accordance with the Federal Rules of Civil Procedure.

**REQUEST NO. 11:**  All documents that evidence all efforts of Plaintiff to determine Defendant's credit worthiness for all loans that are the subject matter of this litigation.

**RESPONSE:**

Plaintiff objects to this Request as overly broad and unduly burdensome as it fails to identify a temporal scope.  Subject to and without waiving its objection, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 12:**  All documents that evidence Plaintiff's claimed damages.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving its

objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 13:** A complete copy of Plaintiff's loan file(s) regarding the loans at issue in this litigation, including all officer notes and officer comments.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 14:** To the extent not produced above, a copy of all Plaintiff's correspondence with any Defendant hereto.

**RESPONSE:**

Plaintiff objects to this Request as vague and ambiguous as there is only one Defendant in this action. Subject to and without waiving its objection, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 15:** To the extent not produced above, a copy of all documents supporting or evidencing Plaintiff's calculation and/or assessment of interest for the loans at issue in this litigation.

**RESPONSE:**

Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 16:** All documents signed by any Defendant.

**RESPONSE:**

Plaintiff objects to this Request as vague and ambiguous as there is only one Defendant in this action.  Subject to and without waiving its objection, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 17:**  All documents, including any internal correspondence, including emails, that relate to any Defendant.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine.  Plaintiff further objects to this Request as vague and ambiguous as there is only one Defendant in this action.  Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually agreeable time.

**REQUEST NO. 18:**  All documents, including any internal correspondence, including emails, that relate to Visible Customer Holdings, LLC.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine.  Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 19:**  All documents, including any internal correspondence, including emails, that relate to John Stapleton.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine.  Plaintiff further objects to this Request on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence.  Subject to and without

waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 20:** Copies of any and all manuals, publications, emails or guidelines, however created or denominated or stored, that are used or consulted by you in any way in determining whether or not to grant a loan.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 21:** Copies of any and all manuals, publications, emails or guidelines, however created, denominated or stored, that are used or consulted by you in any way in determining whether or not to grant an extension or modification of a loan.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 22:** A complete copy of Plaintiff's loan file(s) regarding the loan made by you to Visible Customer, LLC, including all officer notes and officer comments.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff further objects to this Request

on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 23:** Copies of any and all manuals, emails, correspondence or any other material, however denominated, recreated or stored relating to any efforts undertaken by you to secure any type of banking relationship with Curtis Nelson, individually, Marilyn Carlson Nelson, Dr. Nelson, or Carlson Companies.

**RESPONSE:**

Plaintiff objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or work-product doctrine. Plaintiff further objects to this Request as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that it will produce non-privileged documents responsive to this Request at a mutually convenient time.

**REQUEST NO. 24:** All communications with the FDIC regarding the loans identified in your complaint.

**RESPONSE:**

Plaintiff objects to this Request as it seeks information and documents that are not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence.

Dated: September 29, 2011          OPPENHEIMER WOLFF & DONNELLY LLP

                                   By: _Elizabeth Patton_____

                                   David B. Galle (MN #311303)
                                   Christine N. Lindblad (MN #277666)
                                   Rebecca G. Sluss (MN #387963)
                                   Michelle R. Schjodt (MN #0390490)
                                   Elizabeth A. Patton (MN #0391431)
                                   3300 Plaza VII
                                   45 South Seventh Street
                                   Minneapolis, Minnesota 55402
                                   Telephone:    (612) 607-7000
                                   Facsimile:    (612) 607-7100

OPPENHEIMER: 2894399 v02 09/29/2011

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                          Bky. No. 11-43113(RJK)

Curtis C. Nelson,                               Chapter 11

                the debtor.

Crown Bank,

                Plaintiff,
                                                Adv. No. 11-04196
v.

Curtis C. Nelson,

                Defendant.

## ANSWERS TO INTERROGATORIES

TO:   Defendant Curtis C. Nelson and Peter L. Crema, Jr., Hinshaw & Culbertson LLP,
      333 South Seventh Street, Suite 2000, Minneapolis, MN 55402-2431

Plaintiff for its Answers and Objections to Defendant's Interrogatories, state:

### GENERAL OBJECTIONS

1.     The following responses are made without in any way waiving or intending to

waive:

   a.     All questions as to competency, relevancy, materiality, privilege and admissibility
          as evidence for any purpose, of the responses or subject matter thereof, in any
          subsequent proceeding in, or the trial of, this or any other action;

   b.     The right at any time to the use of any of said responses, or their subject matter, in
          any subsequent proceeding in this or in any other action;

   c.     The right at any time to revise, correct, add to, or clarify any of the responses
          herein.

2.      Plaintiff objects to each and every interrogatory to the extent it seeks to discover information protected by work product doctrine or attorney-client privilege, as defined by statute, rule or common law.

3.      Plaintiff objects to the extent any interrogatory seeks to impose an obligation to respond beyond that required by the Federal Rules of Civil Procedure or the Local Rules of Bankruptcy Procedure.

4.      Plaintiff objects to the extent any interrogatory seeks discovery of information that is confidential or a trade secret until issuance of an appropriate confidentiality stipulation and protective order.

Subject to and without waiver of the foregoing General Objections, Plaintiff responds and asserts specific objections in response to Defendant's First Set of Interrogatories.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1.**     Identify each and every person that has knowledge relating to the facts contained in Plaintiff's complaint, or any answer thereto.

**ANSWER:**

Plaintiff identifies the following individuals:

Curtis C. Nelson
Marilyn Nelson
Glen Nelson

John Lindquist, Senior Vice President,
Crown Bank
601 Marquette Avenue South
Suite 125
Minneapolis, MN 55402

Peter Dahl, CEO,
Crown Bank
601 Marquette Avenue South
Suite 125
Minneapolis, MN 55402

Plaintiff further states any individuals identified in the documents produced.

**INTERROGATORY NO. 2.**    Identify each and every person that provided information or assistance in responding to these Interrogatories, or who was consulted or assisted in compiling documents in response to Defendant's Request for Production of Documents served contemporaneously herewith.

**ANSWER:**

   John C. Lindquist and the attorneys at Oppenheimer Wolff & Donnelly LLP provided information and/or assistance in responding to these Interrogatories and in compiling documents in response to Defendant's Request for Production of Documents.

**INTERROGATORY NO. 3.**    Identify each and every person consulted by you in answering these Interrogatories, or Request for Production of Documents served upon you contemporaneously herewith.

**ANSWER:**

   See Answer to Interrogatory No. 2.

**INTERROGATORY NO. 4.**    Identify every expert you have consulted or employed in this proceeding.

**ANSWER:**

   Plaintiff objects to this Interrogatory on the ground that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Subject to and without waiving its objections, Plaintiff states that it has not yet identified expert witnesses who will be called to testify at trial or the subjects of the testimony of any expert witnesses. Plaintiff states that it will comply with any provisions of the Court's Scheduling Order requiring disclosure of expert witnesses.

**INTERROGATORY NO. 5.**    Identify every member of a loan committee, or similar group, that participated in the loan decision to grant a loan, or loans, to Visible Customer, LLC.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence. Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that the following loan officers participated in making the decision to make a loan to Visible Customer, LLC with Curtis C. Nelson as the guarantor in August 2009: Al Doering, Peter Dahl, Ed Hansen, and Kevin Howk.

**INTERROGATORY NO. 6.**    Identify each and every person that participated in a loan committee, or similar group, however, designated, that participated in any decision to extend, modify, or refused to extend or modify any and all loans previously granted to Visible Customer LLC.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence. Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that the loan to Visible Customer LLC was extended or modified more than once. If Defendant will identify the particular extension(s) or modification(s), Plaintiff will respond in accordance with the applicable Rules.

**INTERROGATORY NO. 7.**    Identify each and every person that participated in a loan committee, or similar group, however designated, that participated in determining to grant a $3,000,000.00 loan to Curtis C. Nelson.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence. Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous. Subject to and without waiving its objections, Plaintiff states that the

following directors and/or officers participated in making the decision to make a $3,000,000.00 loan to Curtis C. Nelson: Tom Healy, Jerry Johnson, Bruce Simon, Peter Dahl, Kevin Howk, John Crinklaw, and Ed Hanson.

**INTERROGATORY NO. 8.**    Identify each and every person that participated in a loan committee, or similar group, however designated, that participated in the determining to grant a $130,000.00 loan to Curtis C. Nelson.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence.  Plaintiff also objects to the phrase "grant a loan" as vague and ambiguous.  Subject to and without waiving its objections, Plaintiff states that the following officers participated in making the decision to make a $130,000.00 loan to Curtis C. Nelson: Peter Dahl and John Lindquist.

**INTERROGATORY NO. 9.**    Identify each and every person that analyzed, reviewed or commented on the personal financial statement originally submitted by Curtis C. Nelson in support of his request for a $3,000,000.00 loan.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence.  Subject to and without waiving its objections, Plaintiff states that the personal financial statements were specifically reviewed by loan officer John Lindquist and analyst Margaret Lancaster.  The personal financial statements may have also been viewed by analysts David Nelson and Aranie Ladlie.  Other offices and directors may have reviewed the information contained in the personal financial statements.

**INTERROGATORY NO. 10.** Identify each and every person that reviewed property tax records or other valuations for the real property identified in Curtis C. Nelson's financial statement before determining to grant the $3,000,000.00 loan.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Plaintiff states that it does not recall whether Curtis C. Nelson provided property tax records. Plaintiff relied on the valuations of the property provided by Curtis C. Nelson in his personal financial statements.

**INTERROGATORY NO. 11.** Describe with specificity any deviations from standard loan procedures in determining to grant a loan to Curtis C. Nelson based upon the verified personal financial statements he provided.

**ANSWER:**

Plaintiff states that there was no deviation from standard loan procedures in determining whether to grant a loan to Curtis C. Nelson based upon the personal financial statements he provided.

**INTERROGATORY NO. 12.** Describe with specificity the value generated or placed by the bank on the Visible Customer Stock owned by Curtis C. Nelson and identified in his personal financial statement.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely to lead to the discovery of admissible evidence. Subject to and without waiving its objection, Plaintiff refers Defendant to the documents produced pursuant to Crown Bank's Responses to Defendant's Request for Production of Documents.

**INTERROGATORY NO. 13.**   Identify all individuals assigned to examine or oversee Crown

Bank on behalf of the FDIC.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it is overly broad, unduly

burdensome and seeks information that is neither relevant nor likely to lead to the discovery of

admissible evidence.

**INTERROGATORY NO. 14.**   Identify all documents in your possession or control signed by

the Defendant.

**ANSWER:**

See Crown Bank's Responses to Defendant's Request for Production of Documents.

**INTERROGATORY NO. 15.**   Identify all documents in your possession related to John

Stapleton.

**ANSWER:**

Plaintiff objects to this Interrogatory on the grounds it seeks information that is unlikely

to lead to the discovery of admissible evidence.  Subject to and without waiver of its objection,

see documents produced pursuant to Crown Bank's Responses to Defendant's Request for

Production of Documents.

**INTERROGATORY NO. 16.**   Identify all documents on which you rely in making the

allegations contained in your complaint.

**ANSWER:**

See Crown Bank's Responses to Defendant's Request for Production of Documents.

Dated: September 29, 2011                    OPPENHEIMER WOLFF & DONNELLY LLP

                                             By: _Elizabeth Patton_____

                                             David B. Galle (MN #311303)
                                             Christine N. Lindblad (MN #277666)
                                             Rebecca G. Sluss (MN #387963)
                                             Michelle R. Schjodt (MN #0390490)
                                             Elizabeth A. Patton (MN #0391431)
                                             3300 Plaza VII
                                             45 South Seventh Street
                                             Minneapolis, Minnesota 55402
                                             Telephone:    (612) 607-7000
                                             Facsimile:    (612) 607-7100

OPPENHEIMER: 2894391 v01 09/29/2011

## AFFIDAVIT OF SERVICE BY FAX AND U.S. MAIL

STATE OF MINNESOTA   )
                      ) ss
COUNTY OF HENNEPIN   )

KRISTI HENRICHS, being first duly sworn upon oath, states that on the 29TH day of

September, 2011, she caused the attached to be served:

1. Crown Bank's Responses to Defendant's Interrogatories; and
2. Crown Bank's Responses to Defendant's Request for Production of Documents,

upon the within-named person, by facsimile and U.S. mail by depositing true and correct

copies of the above-referenced documents in the United States mail at Minneapolis, Minnesota to

their last known address as follows:

Peter L. Crema, Jr.
Hinshaw & Culbertson LLP
Accenture Tower, Suite 2000
333 South Seventh Street
Minneapolis, MN 55402
Fax: 612-334-8888

KRISTI HENRICHS

Subscribed and sworn to before
me this 29th day of September, 2011.

NOTARY PUBLIC

JODY A. SEEGER
Notary Public-Minnesota
My Commission Expires Jan 31, 2015



"Busch, Kevin M."
<BuschK@moss-barnett.com
>

03/26/2010 09:40 AM

To    "'twallrich@hinshawlaw.com'" <twallrich@hinshawlaw.com>

cc

Subject    Crown Bank - Nelson

Tom, we fully agree that Mr. Nelson has not and is not providing any representation with respect to the value of the coins. The form of agreement we saw yesterday, however, amounted to a full release of all liabilities and would have resulted in a release of the loans. A simple letter or email from Mr. Nelson to the bank disclaiming any statement with respect to the value of the coins should be sufficient.

Thanks.

**Kevin M. Busch**
*Attorney at Law*
**Moss & Barnett**
*A Professional Association*
Ph: 612-877-5292  Fax: 612-877-5999
BuschK@Moss-Barnett.com
90 South Seventh Street, Suite 4800  | Minneapolis, MN 55402
www.moss-barnett.com

The information contained in this e-mail message and any attachments is proprietary and intended only for the confidential use of the designated recipient named above. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error please notify us immediately at the e-mail address listed above. Thank you.

Statement Required by U.S. Treasury Department

The U.S. Treasury Department requires us to advise you that this written advice is not intended or written by our firm to be used, and cannot be used by any taxpayer, for the purpose of avoiding any penalties that may be imposed under the Internal Revenue Code. Written advice from our firm relating to Federal tax matters may not, without our express written consent, be used in

EXHIBIT

C

promoting, marketing or recommending any entity, investment plan or arrangement to any taxpayer, other than the recipient of the written advice.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                          BKY Case No. 11-43113 RJK

Curtis C. Nelson,

            Debtor.

Crown Bank,                                     Adv. No. 11-4196

            Plaintiff,

vs.

Curtis C. Nelson,

            Defendant.

## UNSWORN DECLARTION OF CURTIS C. NELSON

I, Curtis C. Nelson, Defendant, declare under penalty of perjury that the foregoing is true and correct.

1.      I have reviewed Crown Bank's motion for summary judgment and make this affidavit in support of my response to the motion.

2       As to the coin collection, I never made any statements regarding additional coins that would increase the value of the collection to $3,000,000 or $4,000,000 dollars.   In conversations with John Lindquist at Plaintiff, I stated that I would provide the coin collection as collateral, after Mr. Lindquist requested the collection be provided as collateral.

3.      I had a coin collection that was originated by my grandfather.  The coins were stored in a gun safe in the garage of my home.  When David Marion visited my home to review the collection, which was not done at Plaintiff's request and was for an unrelated matter, I did

26

121294567

not make any comment about any particular items.  Mr. Marion reviewed the coins for approximately 25 minutes.  This turned out to be eleven large bins of coins.    I had no idea what the coins were worth and relied solely on Mr. Marion's valuation.  This is evidenced by the valuation in my original financial statement to Crown Bank in which I listed $500,000 for Jewelry, gemstones and rare coins. .

4.    Crown Bank never had anyone with experience in valuing coins look at the coins prior to loaning any money or extending the maturity date on any loans.  After taking the coins as collateral, John Lindquist and Peter Dahl visited my home and briefly looked at the coins.  Later, Mr. Lindquist and I loaded the coins into eleven large plastic bins for delivery to a secured facility at Brinks at the Plaintiff's direction.

5.    As to the inter-family loans, on numerous occasions I had conversations with John Lindquist at the bank.  Mr. Lindquist is a vice-president of Plaintiff.  In at least one of these conversations, the loans from family members were discussed and Mr. Lindquist stated to me that "we aren't concerned about those."    I stated that if required by Plaintiff I would try to obtain agreement from my family members to subordinate their debt to the Plaintiff's debt.  The Plaintiff was aware at all relevant times of loans owed to family members.

6.    In an email to John Lindquist, I stated I would be able to obtain the subordination by a trust of its rights under a preexisting loan to the Defendant.  The trust loan documentation already contained a provision allowing for subordination of that facility to any third party debt.  Despite my repeated offers to document the subordination of the trust facility, Plaintiff never followed up on this issue.

7.    As to my houses, when I originally applied for the loan I believed my houses were worth the amounts listed on my financial statement.  The value of the houses was listed as of

121294567

July 2007, and I relied on a 2005 appraisal, as noted in my financial statement.  Over the years I have spent significant funds improving my homestead, by adding three acres of land, a new driveway and a new entrance.

8.      As to the Tradestation Accounts, at no time prior to this lawsuit did the Plaintiff ever request any statements.  Tradestation did not clear its own trades, and at the time had different clearing houses for stocks and options, (JPMC), currencies (Gain) and for futures (RJ O'Brien).  Unless Plaintiff has statements from all three of these clearing houses, it probably does not have complete information.

9.      Plaintiff makes it seem as if I invested in Visible Customer on the ground floor and borrowed money to set up the company.  This was not the case.  Plaintiff was not relying on anything from me, instead it was desperately trying to shore up a troubled loan.

10.     Plaintiff's loans arise from my investment in Visible Customer Holdings, LLC ("Visible Customer"), an entity that was established on August 1, 2005 by John Stapleton.  Visible Customer and John Stapleton were both customers of Plaintiff before my investment in Visible Customer.

11.     I was not an owner of Visible Customer until mid-2008.  At such time, unbeknownst to me, Visible Customer was already a troubled company, which in turn caused Plaintiff great concern.  Plaintiff needed, desperately, to find a new investor to shore up the books as to Visible Customer loans, and thereby shore up Plaintiff's balance sheet relating to Visible Customer loans.  This investor wound up being me.

12.     When Mr. Stapleton introduced me to Crown Bank, he was already indebted to the bank by at least $2,000,000, all of his equity in Visible Customer.  Peter Dahl pumped up Mr.

121294567

Stapleton to me and stated how willing Crown Bank was to loan me funds to invest in Visible Customer.  It appeared as if the bank was predisposed to lend funds to me.

13.     I not only ended up putting new funds into Visible Customer, after the initial loan Plaintiff required that I personally guarantee another loan previously extended to Visible Customer and John Stapleton.  This was demanded by Plaintiff after they already had me on the hook and I felt I had no choice, as if Plaintiff had the proverbial gun to my head.

14.     In addition to the funds I borrowed from Crown Bank, I invested personal funds of nearly $7,000,000 into Visible Customer and forfeited nearly all of my salary for two years.

15.     Plaintiff, in its statement of damages, fails to account for the funds from the sale of the coins and the funds it received from foreclosing its lien on the assets of Visible Customer. In addition, Plaintiff required Visible Customer to sell its only real asset, the software, to Mr. Stapleton for $500,000, which upon information and belief, went to Plaintiff.


Dated:  September 30, 2011               /s/ Curtis C. Nelson
                                         Curtis C. Nelson

121294567

**From:** Curtis Nelson
**Sent:** Tuesday, July 08, 2008 8:48 AM
**To:** John Lindquist
**Cc:** curtis@curtisone.com
**Subject:** Lets talk on Friday, thanks!

John,

Here is the Balance sheet and '07 extension. Please note that the Loan to Curtis Co.'s One LLC from my Trust is meant to look like equity, and will most likely be paid off with a future distribution from the Trust itself. Therefore we can subordinate it to any Debt. You provide. I have not looked at my Credit Report for sometime but I am sure that some damage was done, when in the middle of my Divorce, I was instructed by my Attorney's not to pay down some of the Marital Debt. I finally overrode their direction and did what I felt I needed to and what was right. However, that meant two one Million dollar notes one to Chase and one to Wells were initially extended but when Marjorie (My X) refused to sing the extension they ultimately were paid several months late. Some of the other Credit Card obligations were impacted by the same issue. The vast Majority of those issues were captured in '07. Since that time I have paid everything current, and paid off several of the smaller credit obligations.

As I mentioned based on what I have already done for My X-Wife, I have no legal obligations to her other than the Monthly Family support which terminates in six years after my daughter Jennifer turns 18 or goes to college. I very well may still provide Marjorie with another Million dollars or so, to upgrade her and my children's living conditions, although they are more than comfortable right now. Obviously, even though I don't have any legal obligation to her, I always try and do what is right, and what is in the best interest of my children.

Might I suggest that when we talk on Fri. we look at least three different scenario's one being what kind of total Credit line or Facility you would be willing to do, without going through the subordination exercise and done as a personal loan. Two, The total facility you would be willing to make available given a loan to Curtis Co.'s One and with the Trust loan subordinated. Three, and finally, a facility for Curtis Co.'s One with the Trust Debt subordinated and with a personal guarantee. If there are any other scenario's you think are relevant or what you think is relevant differs from the above, please put your thoughts forward.

Here are the various accounts I need set up, please have some call me to follow up, the sooner I can terminate my relationship with US Bank the better. It is unfortunate I have to do this because I have a lot of relationships with the leadership and Board of that company; however, their staff seems unable to deliver on their best intentions.

| | | |
|---|---|---|
| 1801-3110-4085 | Curtis Carlson Nelson | Platinum Checking w/10k Reserve |
| 1047-5841-9451 | Curt Co.'s One. | Money Market Savings |
| 1047-7671-0691 | Curt Co.'s One. | Free Small Bus. Checking w/Auto draw from Savings |
| 1047-7671-0709 | Curtis Inc. | Free Small Bus. Checking |
| 1047-5841-9444 | Curtis Inc. | Money Market Savings |

Also Savings and Checking accounts for Juliet A. Nelson, and Jennifer L. Nelson

John, I look forward to talking with you and to doing business with you, I am egger to get something in place as soon as possible in order to make the final payments to Visible Customer, as well as supplying additional capital for the continuing growth and operations of my other businesses.



**EXHIBIT**

D

# Curtis C Nelson

## Curtis CO.'s One

curtis@curtisone.com
952-473-0379

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

---

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

|  |  |
|---|---|
|  | Case No.:  11-43113 |
| In re: | Chapter 11 Case |
| Curtis C. Nelson, | |
| Debtor. | |

|  |  |
|---|---|
| Crown Bank, | |
| Plaintiff, | Adversary No.: 11-04196 |
| vs. | |
| Curtis C. Nelson, | |
| Defendant. | |

---

### PROOF OF SERVICE

---

Marie A. Pocock, an employee of Hinshaw & Culbertson LLP, and in the course of said employment on September 30, 2011 caused the following document:

Defendant's Response to Plaintiff's Motion for Summary Judgment;
Unsworn Declaration of Thomas G. Wallrich;
Unsworn Declaration of Curtis C. Nelson;
Proposed Order

to be filed electronically with the Clerk of Court through ECF, and that a copy of the above-referenced documents were delivered to the people listed below who are Filing Users, by automatic e-mail notification on pursuant to the Electronic Case Filing System and this notice constitutes service or notice pursuant to Local Rule 9006-1(a).

**David B Galle - -** dgalle@oppenheimer.com

Dated:  September 30, 2011.              /s/ Marie A. Pocock
                                                        Marie A. Pocock

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:                                                    BKY Case No. 11-43113 RJK

Curtis C. Nelson,

                    Debtor.

Crown Bank,                                               Adv. No. 11-4196

            Plaintiff,

vs.

Curtis C. Nelson,

            Defendant.

## ORDER

This matter came before the court on Crown Bank's motion for summary judgment. Based on the motion,

IT IS ORDERED:

    1.      Crown Bank's motion for summary judgment is denied.

    2.      Count I of Crown Bank's complaint is dismissed with prejudice.

Dated:                                                    _____
                                                          United States Bankruptcy Judge

121294567